DECISION AND JUDGMENT ENTRY
{¶ 1} Pro se appellant, Katherine M. Widlar, appeals from a judgment entry by the Toledo Municipal Court granting appellee Rudolph ("Randy") Young's motion for summary judgment. For the reasons that follow, the order of the trial court is affirmed.
 {¶ 2} This case arises from a contract for dating referral services that was entered into between appellant, Katherine Widlar, and Second Mark of Ohio, dba MatchMaker International ("Matchmaker"). The contract was executed on December 26, 2000.
 {¶ 3} On May 2, 2001, Widlar filed a pro se complaint in an earlier case against MatchMaker, wherein she sought rescission of the contract and a refund of her money. The trial court denied Widlar's claim and awarded judgment in favor of MatchMaker. On June 7, 2002, this court, in Widlar v. MatchMaker Internatl.,
6th Dist. No. L-01-1433, 2002-Ohio-2836, affirmed the trial court's decision.
 {¶ 4} On October 21, 2002, Widlar finally began utilizing the MatchMaker services. A month later, she voluntarily put herself on "hold" status. She did not return to "active" status until May 23, 2003. Unfortunately for Widlar, on June 14, 2003, Second Mark of Ohio dba MatchMaker International ceased doing business.
 {¶ 5} On February 14, 2004, Widlar brought the instant action for breach of contract against Young, individually, as the "proprietor of MatchMaker International." Young filed an answer to the complaint denying liability.
 {¶ 6} On or about March 16, 2004, Widlar filed an amended complaint adding Second Mark of Ohio, Inc. dba MatchMaker International as a party, and asking the court "to pierce the corporate veil due to fraud." Young, through his counsel, filed an answer denying the allegations against him and a motion to transfer the case from small claims to the regular docket of the Toledo Municipal Court.
 {¶ 7} On May 10, 2004, the case was transferred to the regular docket of the Toledo Municipal Court, and on December 22, 2004, Young moved for summary judgment. Widlar opposed the motion.
 {¶ 8} On April 22, 2005, a hearing was held on the motion for summary judgment. The trial court ruled from the bench that the motion would be granted in favor of Young. At the court's request, defense counsel prepared and submitted a proposed judgment entry. On May 6, 2005, the trial court granted summary judgment in favor of Young and against Widlar.
 {¶ 9} On May 25, 2005, Widlar filed a notice of appeal from the judgment entry. In this appeal, she asserts the following assignments of error:
 {¶ 10} I. "THE MUNICIPAL COURT ERRED IN GRANTING DEFENDANTA-PPELLEE YOUNG'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 11} II. "THE MUNICIPAL COURT ERRED WHEN IT PASSED ITS VERDICT IN FAVOR OF DEFENDANT-APPELLEE YOUNG'S SUMMARY JUDGMENT MOTION DURING THE APRIL 22, 2005 HEARING WITHOUT GIVING BOTH SIDES EQUAL OPPORTUNITY TO PRESENT AND ARGUE THEIR EVIDENCE. THE COURT DID NOT ALLOW PLAINTIFF-APPELLANT PRO SE WIDLAR TO SHOW HOW THE EVIDENCE ATTACHED TO HER MOTION IN OPPOSITION PRESENTED A GENUINE ISSUE OF MATERIAL FACT, OR ENTER INTO EVIDENCE ADDITIONAL MATERIAL, REFERENCED IN HER MOTION IN OPPOSITION, WHICH WAS NOT GIVEN TO HER BY COUNSEL FOR DEFENDANT UNTIL AFTER THE DEADLINE TO FILE HER MOTION IN OPPOSITION HAD PASSED.
 {¶ 12} "THE MUNICIPAL COURT REPEATED THE ERROR DURING THE MOTION HEARING ON JULY 15, 2005, AT WHICH PLAINTIFF-APPELLANT'S MOTION TO RECONSIDER THE ABOVE-MENTIONED RULING, AS WELL AS TWO OTHER MOTIONS, WAS TO BE CONSIDERED. THE COURT AGAIN DID NOT ALLOW PLAINTIFF-APPELLANT TO SPEAK TO THE EVIDENCE INSUPPORT OF HER MOTION, OR PRESENT THE ADDITIONAL EVIDENCE, DESPITE REPEATED REQUESTS.
 {¶ 13} "THE TRIAL COURT ERRED WHEN IT ACCEPTED AS FACT STATEMENTS MADE BY ATTORNEY GOLDBERG REGARDING THE NATURE AND CURRENT LEGAL STATUS OF THE COMPANY CONTROLLED BY HIS CLIENT, DEFENDANT-APPELLANT YOUNG, WITHOUT REQUIRING HIM TO PRESENT EVIDENCE IN SUPPORT OF HIS STATEMENTS."
 {¶ 14} First, we examine Widlar's second assignment of error, wherein she states that the trial court erred: (1) in denying her an opportunity to present and argue her evidence; and (2) in accepting as fact, without supporting evidence, defense counsel's statements regarding the nature and current legal status of the company with which his client was involved.
 {¶ 15} The transcript of the April 22, 2005 summary judgment hearing begins with the trial court asking defense counsel, Stuart J. Goldberg, to tell the court what the case is all aboutin order to save the court the trouble of having to read thefile. In response, Goldberg obligingly provides the court with a brief description of the case, complete with legal conclusions that (naturally) favor his client's point of view. For instance, in describing Young's involvement with the corporation, Goldberg states that Young "certainly was not an alter ego" for the corporation. And when the court asks, "And the corporation, I would guess, the organization of it was probably all totally valid and solid," Goldberg, without offering any evidentiary support, answers in the affirmative.
 {¶ 16} After Goldberg, Widlar is given her turn to speak, such as it was. The following colloquy reflects the entirety of the proceedings that occur after the court asks Widlar to "talk" about the summary judgment:
 {¶ 17} "MS. WIDLAR: The summary judgment relies upon — the argument here relies upon the fact that Mr. Young was not in the office with me when I signed the contract and cites North vs. Higby — no, it's not that — oh, here. This is James Smith and Associates vs. Everett, stating that there is not personal liability while conducting business with the third person on behalf of a corporation if the third person is aware that is the corporation with which he is dealing.
 {¶ 18} "I was not aware that I was dealing with Second Mark; but that's not even relevant because that particular case refers to a situation in which a man was doing business with another man —
 {¶ 19} "THE COURT: Okay.
 {¶ 20} "MS. WIDLAR: — who was —
 {¶ 21} "THE COURT: I'm finding for the Defendant on summary judgment.
 {¶ 22} "If you would like to get me a judgment entry, it would be of benefit for any future proceedings.
 {¶ 23} "MR. GOLDBERG: Well, Your Honor —
 {¶ 24} "THE COURT: And I strongly suggest that if you have thousands of dollars to spend on a dating service, you have that right; but I would suggest if you do this again, that you spend a small sum of money and hire an attorney to read your contracts for you and advise you before you sign them. Okay? So that's what we're doing now.
 {¶ 25} "Could I expect that within 30 days?
 {¶ 26} "MR. GOLDBERG: Yes, Your Honor, probably within a week.
 {¶ 27} "THE COURT: Is that reasonable?
 {¶ 28} "MR. GOLDBERG: Yes.
 {¶ 29} "MS. WIDLAR: So, Your Honor, the evidence for a case against Second Mark —
 {¶ 30} "THE COURT: I'm not answering any more questions about this case.
 {¶ 31} "MS. WIDLAR: Sorry, Your Honor.
 {¶ 32} "THE COURT: I've granted his motion for summary judgment. I would strongly suggest you get legal counsel, please.
 {¶ 33} "MS. WIDLAR: Thank you, Your Honor.
 {¶ 34} "(Proceedings concluded.)"
 {¶ 35} Review of the transcript reveals not just a lack of preparedness and thoughtfulness on the part of the trial court, but also a flagrant and unexplained bias in favor of Young and his counsel and against Widlar.[1] Not only did the court rely on defense counsel to educate it about the case, it accepted, apparently on faith, all that defense counsel had to say. It even asked defense counsel to draft the judgment entry in the case.[2]
 {¶ 36} Widlar, on the other hand, was given almost no chance to speak, and no opportunity whatsoever to proffer evidence she had gathered in support of her opposition. She had barely begun her remarks when the trial court abruptly cut her off with a pronouncement that summary judgment was granted in favor of defendant. This was error as Widlar urged in her assignments of error; but, as will be seen below, it was harmless error.[3]
 {¶ 37} This court is well aware that, under Civ.R. 56(C), Widlar's attempted proffer on the day of the summary judgment hearing was untimely made. (Civ.R. 56(C) relevantly provides that "[t]he adverse party, prior to the day of the hearing, may serve and file opposing affidavits. * * *" Id. (Emphasis added.)) Caselaw makes clear, however, that the question of whether to consider an untimely filed affidavit is within the discretion of the trial court. Clodgo v. Kroger Pharmacy (Mar. 18, 1999), 10th Dist. No. 98AP-569, citing Stanger v. Waterford Tower Co.
(Aug. 25, 1994), Franklin App. No. 94APE03-371, unreported; Ryanv. Jones (Oct. 26, 1993), Franklin App. No. 93AP-892, unreported; Powell v. Consolidated Rail Corp. (1986),31 Ohio App.3d 219, 220. Where there is an abuse of that discretion, a trial court's decision is subject to reversal. Id.
 {¶ 38} Here, Widlar states that documentary evidence she would like to have had admitted — evidence that she had long sought from opposing counsel and had notified the court months earlier had not been produced — was not provided to her by defendant until two weeks after her filing deadline.[4]
 {¶ 39} We find that under the circumstances of the instant case, where defense counsel's delay in producing the requested documents made it impossible for Widlar to comply with the rules in a timely fashion, the trial court, in refusing to allow the admission, or even the proffering, of Widlar's evidence, clearly abused its discretion.
 {¶ 40} The question now becomes whether such abuse of discretion resulted in unfair prejudice or, instead, amounted only to harmless error. To answer this question, we must consider the merits of Widlar's first assignment of error, wherein she claims that it was error for the trial court to grant Young's motion for summary judgment.
 {¶ 41} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 42} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 43} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Ryberg v. Allstate Ins. Co.
(July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son,Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
 {¶ 44} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial.
 {¶ 45} According to Widlar, the trial court erred in this case when it denied Widlar's request to pierce the corporate veil in order to expose Young to personal liability.
 {¶ 46} A well-established principle of corporate law provides that where a valid corporation exists, a corporate officer will not be held personally responsible for the liabilities of that corporation. Collum v. Perlman (April 30, 1999), 6th Dist. No. CVF 951-6341, citing Centennial Ins. Co. v. Tanny Internatl.
(1975), 46 Ohio App.2d 137, 1411-42. There is an exception to this rule, however, developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes. Id., citing BelvedereCondominium Unit Owners' Assn. v. Roark Cos., Inc. (1993),67 Ohio St.3d 274, 287. Under this exception:
 {¶ 47} "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."Belvedere, supra, at paragraph three of the syllabus.
 {¶ 48} Here, Widlar's proposed evidence, in the form of Second Mark of Ohio, Inc. documentation, shows: (1) that appellee Young was the sole shareholder and sole director of Second Mark of Ohio, Inc.; and (2) that it was Young, alone, who made the decision to close the business and terminate its employees.
 {¶ 49} Although "`[a] corporation is a separate legal entity from its shareholder even where there is only one shareholder in the corporation,' some courts have held that this fact alone is sufficient to meet the first prong of the Belvedere test."Stypula v. Chandler, 11th Dist. No. 2002-G-2468, 2003-Ohio-6413
(citations omitted); see, e.g., Zimmerman v. Eagle Mtge. Corp.
(1996), 110 Ohio App.3d 762, at 772 (stating, "The record is uncontroverted that Musgrave was the sole stockholder and director of Eagle and, as such, exercised complete control over Eagle's corporate affairs.")
 {¶ 50} Here, where the proposed evidence demonstrates not just that Young was the sole shareholder and director of Second Mark of Ohio, Inc., but also that he single-handedly made the decision to close the business and terminate its employees, we find that reasonable minds could conclude that Young exercised complete control over the corporation such that the corporation had no separate mind, will, or existence of its own. Thus, the proposed evidence was sufficient to establish the first prong of the Belvedere test.
 {¶ 51} As indicated above, the second prong of theBelvedere test requires that control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity. Belvedere, supra, at paragraph three of the syllabus. Widlar frankly states in her brief that she does not contend that defendant-appellee committed any outright fraud. Instead, citing Wiencek v. Atcole Co., Inc.
(1996), 109 Ohio App.3d 240, 245, she argues that the "unfairness and inequity" that Young exhibited "by concealing from MatchMaker customers the true corporate name,[5]
Second Mark of Ohio, Inc., by closing the MatchMaker office suddenly and without notice, and by making the corporation unservable"[6] are sufficient to satisfy the second prong of the Belvedere test.
 {¶ 52} This court in Collum, supra, specifically addressed the Wiencek decision and stated as follows:
 {¶ 53} "In that case, the court expanded upon the Belvedere
standard and concluded that where shareholders exercise their control over a corporation in such a manner as to commit an unjust or inequitable act upon the person seeking to disregard the corporate entity, the second prong of the Belvedere test will be satisfied. [Citation omitted.] In our view, however, that conclusion goes too far. In Belvedere the court recognized that the principal behind piercing the corporate veil was to hold `* * * individual shareholders liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity.' [Citation omitted.] However, in setting forth the three prong test as it did in paragraph three of the syllabus, the court appears to have limited the application of the doctrine to those situations in which "control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity[.] (Emphasis added.)"
 {¶ 54} Here, even assuming, arguendo, that Widlar's allegations are true, nothing in the record before us supports a conclusion that Young exercised control over Second Mark of Ohio, Inc. in such a manner as to commit fraud or an illegal act against Widlar.[7] Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 55} In light of our determination that Widlar has failed to establish facts that would support relief from judgment (even with her proposed evidence), we are constrained to find that neither the trial court's failure to admit or consider the proposed evidence nor the trial court's uniquely poor handling of this case resulted in unfair prejudice to Widlar. Indeed, the correct result was reached in this case, in spite of that poor handling. As a result, appellant's second assignment of error is found not well-taken.
 {¶ 56} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Skow, J. concur.
 Parish, J. concurs in judgment only.
[1] The transcript of the July 15, 2005 reconsideration hearing, although not relevant to a determination of this appeal (see this court's October 17, 2005 decision and judgment entry), can be similarly described. In that hearing, immediately after Widlar informed the court that she would like to present evidence in support of her opposition to the summary judgment motion — specifically, evidence concerning the issue of piercing the corporate veil — the court stated: "I'll tell you what. I've reconsidered; I deny your motion. I have pierced the veil beforeand was overturned. I'm telling you you're going to have to find a better way of doing it because I'm not going to pierce this veil. * * * The corporation is in place; it's the way the law is." (Emphasis added.)
Apparently, the court's decision not to pierce the corporate veil in this case was based not on the facts before it, but on the fact that in a separate and unrelated case its decision to do so was reversed.
[2] The four-sentence judgment entry granting the motion is noteworthy in that it is devoid of meaningful analysis and contains no findings of fact. Its conclusions of law are set forth in a single sentence wherein the court states simply that there is no genuine issue of material fact, and that, as a matter of law, there is no basis to pierce the corporate veil of Second Mark of Ohio, Inc.
[3] Normally, this court would not comment on a trial court's conduct. Here, however, the issue of trial court's conduct was specifically raised in appellant's second assignment of error, and it was egregious.
[4] She states that other evidence she would like to have had admitted was simply "too voluminous" to attach to her opposition document.
[5] We note that Widlar does not dispute that the corporate name of Second Mark of Ohio, Inc. appears in large, bold print in the top of right-hand corner of the subject contract.
[6] With respect to her claim that the corporation was unservable, Widlar argues in her September 26, 2005 appellate brief that "[n]o representative of the corporation has responded to Plaintiff-Appellant's suit." Assuming the truth of this allegation, the evidence is uncontroverted that Young ultimately consented to judgment against Second Mark of Ohio, Inc. and, further, made no objection when the trial court granted Widlar's motion for default judgment in favor of Widlar and against the corporation.
[7] To the extent that Widlar asserts in other portions of her brief that Young failed to follow proper formalities in dissolving the corporation, we find that such deficiencies, even if shown to be true, are likewise insufficient to satisfy the second prong of the Belvedere test. See Collum, supra, (corporate owner's failure to follow adequate formalities when liquidating corporate assets did not satisfy second prong ofBelvedere test.)