DOMBROSKI, APPELLEE, *v.* WELLPOINT, INC. ET AL., APPELLANTS, ET AL.

[Cite as *Dombroski v. WellPoint, Inc.,* 119
Ohio St.3d 506, 2008-Ohio-4827.]

(No. 2007–2162—Submitted June 4, 2008—Decided September 30, 2008.)

MOYER, C.J.

# I

{¶ 1} The Seventh District Court of Appeals has certified this case pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25. The court of appeals found its judgment to be in conflict with the judgments of the Sixth District Court of Appeals in *Collum v. Perlman* (Apr. 30, 1999), Lucas App. No. L–98–1291, 1999 WL 252725, and *Widlar v. Young*, Lucas App. No. L–05–1184, 2006-Ohio-868, 2006 WL 456724, on the following issue: "Does the second prong of [the test for piercing the corporate veil set forth in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075], which states that the corporate veil can be pierced when control of the corporation 'was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity,' also allow the corporate veil to be pierced in cases where control was exercised to commit unjust or inequitable acts that do not rise to the level of fraud or an illegal act?"

{¶ 2} For the following reasons, we answer the question in the negative and reverse the judgment of the court of appeals. However, we modify the second prong of the *Belvedere* test to require that a plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act.

# II

{¶ 3} The trial court dismissed the claims relevant to this matter upon a Civ.R. 12(B)(6) motion to dismiss. We therefore rely upon the allegations in the amended complaint to establish the material facts for our review. *Vitantonio, Inc. v. Baxter*, 116 Ohio St.3d 195, 2007-Ohio-6052, 877 N.E.2d 663, ¶ 2.

{¶ 4} Plaintiff-appellee, Kimberly J. Dombroski, suffers from profound sensorineural hearing loss in both ears; in other words, she is completely deaf. Shortly after she was diagnosed with this condition, her treating physician determined that it was medically necessary for her to receive a cochlear implant.[1]

---

1. A cochlear implant is a small electronic device that is placed inside a deaf person's ear and provides him or her with a sense of sound. According to the amended complaint, such implants are

Dombroski subsequently received a cochlear implant in her left ear, which restored her ability to hear in that ear.

{¶ 5} However, the implant did not increase Dombroski's ability to hear in her right ear. Her treating physician determined that it was medically necessary for her to receive a second cochlear implant so that she could localize sound and better communicate with others.

{¶ 6} Dombroski's initial implant was paid for by an insurance company that is not a party to this case. When she sought the second implant, she had a health insurance contract with defendant Community Insurance Company ("Community"). One of Community's affiliates, defendant Anthem UM Services, Inc. ("Anthem UM"), participated in the administration of Dombroski's policy, as did defendant-appellee Anthem Insurance Companies, Inc. ("Anthem Insurance"). Defendant-appellee WellPoint, Inc., which is a publicly traded company listed on the New York Stock Exchange, owns 100 percent of the stock of these three companies.

{¶ 7} In accordance with the terms of the Community insurance policy, Dombroski's treating physician requested authorization to place a cochlear implant in Dombroski's right ear. Anthem UM denied coverage, claiming that "the use of bilateral cochlear implants to improve hearing is considered investigational." Dombroski appealed this decision through Anthem UM's internal appeals process, but was unsuccessful.

{¶ 8} Dombroski filed the instant action against Community, Anthem UM, Anthem Insurance, and WellPoint. In her first two claims for relief, she alleged that the defendants had breached the insurance contract and were promissorily estopped from violating their promises to act in good faith and in accordance with their own policies and procedures. For her final claim, Dombroski alleged that the defendants had acted in bad faith in processing and repeatedly denying her requests for a cochlear implant in her right ear and that these actions caused her to suffer physical and pecuniary losses and emotional distress. Insurer bad faith is an actionable tort in this state. See *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus.

{¶ 9} As further support for her claims against WellPoint and Anthem Insurance, Dombroski alleged that "WellPoint through [Anthem Insurance] establishes certain 'corporate medical policies,' which it directs its subsidiaries to utilize in the administering, handling and processing of claims under its insurance products throughout the United States." She further alleged that a specific Anthem Insurance medical policy served as the primary basis for denying coverage for

approved by the Food and Drug Administration and have a success rate of approximately 90 percent.

the cochlear implant and that the "handling, processing and repeated denials" of coverage constituted bad faith. Finally, Dombroski alleged that (1) WellPoint owned 100 percent of the stock of the other defendants, (2) WellPoint controlled those subsidiary corporations to such a degree that the subsidiaries had no separate minds, wills, or existences of their own, and (3) WellPoint and Anthem Insurance are operated and controlled by the same officers and have the same office headquarters, and one of WellPoint's officers signed the insurance certificate issued to Dombroski.

{¶ 10} WellPoint and Anthem Insurance filed motions to dismiss pursuant to Civ.R. 12(B)(6). They argued that Dombroski failed to raise a claim upon which relief could be granted because she did not have privity of contract with either organization and she failed to allege a legitimate basis for piercing the corporate veil to hold the organizations liable in their capacities as shareholders of Community and Anthem UM.

{¶ 11} The trial court found that Dombroski had not alleged facts showing privity of contract with either organization. It further found that Dombroski had failed to allege facts sufficient for piercing the corporate veil because she did not demonstrate "the type of illegal or unjust result intended by *Belvedere*." The trial court therefore dismissed Dombroski's claims against WellPoint and Anthem Insurance pursuant to Civ.R. 12(B)(6). This ruling did not affect her claims against Community and Anthem UM.

{¶ 12} The court of appeals reversed the decision of the trial court, holding that Dombroski had pleaded sufficient facts to advance claims against WellPoint and Anthem Insurance based on piercing the corporate veil. *Dombroski v. WellPoint, Inc.,* 173 Ohio App.3d 508, 2007-Ohio-5054, 879 N.E.2d 225, ¶ 37.

{¶ 13} The court of appeals' discussion of the second prong of the *Belvedere* test for piercing the corporate veil is relevant to our review. The second prong requires the plaintiff to show that shareholders exercised their control of the corporation to be pierced "in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity." *Belvedere,* 67 Ohio St.3d 274, 617 N.E.2d 1075, paragraph three of the syllabus. The court of appeals read this provision broadly, stating that a plaintiff can pierce the corporate veil for less than fraudulent or illegal acts: "Many appellate districts, including ours, have defined the second prong of *Belvedere* as including unjust or inequitable acts." *Dombroski* at ¶ 25. Following that interpretation, the court concluded that the alleged bad-faith breach of the insurance contract at issue here was sufficiently unjust to survive a Civ.R. 12(B)(6) motion. Id. at ¶ 33.

{¶ 14} The court of appeals determined that its decision conflicted with the judgments of the Sixth District Court of Appeals in *Collum v. Perlman* (Apr. 30, 1999), Lucas App. No. L–98–1291, 1999 WL 252725, and *Widlar v. Young,* Lucas

App. No. L–05–1184, 2006-Ohio-868, 2006 WL 456724, and certified the case as a conflict to this court. We recognized the certified conflict.

## III

### A. Limited Shareholder Liability and Piercing the Corporate Veil

{¶ 15} This case requires us to determine what conduct must be demonstrated to fulfill the second prong of the test for piercing the corporate veil created in *Belvedere*. To place our decision in context, we must first examine the nature of limited shareholder liability and the rationale for the principle that piercing the corporate veil operates as an exception to this limited liability.

{¶ 16} The principle that shareholders, officers, and directors of a corporation are generally not liable for the debts of the corporation is ingrained in Ohio law. See Section 3, Article XIII, Ohio Constitution; *Belvedere*, 67 Ohio St.3d at 287, 617 N.E.2d 1075, citing Presser, Piercing the Corporate Veil (1991) 1–4. The corporate form is useful primarily because it creates a division between shareholders and their business concerns: "[The corporate form] has been introduced for the convenience of the company in making contracts, in acquiring property for corporate purposes, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals." *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 177, 30 N.E. 279.

{¶ 17} However, shareholders are not absolutely immune from liability for the actions of their corporations. "[L]ike every other fiction of the law, when urged to an intent and purpose not within its reason and policy, [the corporate form] may be disregarded." *State ex rel. Atty. Gen.* at paragraph one of the syllabus. Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation "for criminal or fraudulent purposes" to the detriment of a third party. *Belvedere*, 67 Ohio St.3d at 287, 289, 617 N.E.2d 1075. Piercing the corporate veil in this manner remains a "rare exception," to be applied only "in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson* (2003), 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643.

{¶ 18} In *Belvedere*, this court established a three-pronged test for courts to use when deciding whether to pierce the corporate veil, based on a test developed by the United States Court of Appeals for the Sixth Circuit in *Bucyrus–Erie Co. v. Gen. Prods. Corp.* (C.A.6, 1981), 643 F.2d 413, 418. *Belvedere*, 67 Ohio St.3d at 288–289, 617 N.E.2d 1075. This test focuses on the extent of the shareholder's control of the corporation and whether the shareholder misused the control so as to commit specific egregious acts that injured the plaintiff: "The corporate form may be disregarded and individual shareholders held liable for wrongs committed

by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at paragraph three of the syllabus. All three prongs of the test must be met for piercing to occur.

{¶ 19} We must take as true the allegation that WellPoint and Anthem Insurance controlled the subsidiary corporations, Community and Anthem UM, to such a degree that those corporations had no separate minds, wills, or existences of their own. Thus, our review of this case focuses on the second prong of the Belvedere test.

### B. Fraud or Illegal Acts versus Unjust or Inequitable Acts

{¶ 20} We must determine how broadly to construe the language of the second prong of the Belvedere test, that "control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity." Belvedere, 67 Ohio St.3d 274, 617 N.E.2d 1075, paragraph three of the syllabus. The courts of appeals have interpreted the phrase "fraud or an illegal act" in two different ways.

{¶ 21} Several courts of appeals, including the Seventh District Court of Appeals in this case and the Third, Tenth, Eleventh, and Twelfth District Courts of Appeals, have liberally construed the language of the second prong. These courts rely on the fact that piercing is an equitable remedy, seizing on language from Belvedere that piercing should occur " 'when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity.' " Stypula v. Chandler, Geauga App. No. 2002–G–2468, 2003-Ohio-6413, 2003 WL 22844296, at ¶ 20, quoting Belvedere, 67 Ohio St.3d at 287, 617 N.E.2d 1075; see also Wiencek v. Atcole Co., Inc. (1996), 109 Ohio App.3d 240, 245, 671 N.E.2d 1339. "[T]he true question to be asked is whether it would be unjust under the circumstances of each case to not pierce the corporate veil." Robert A. Saurber Gen. Contr. v. McAndrews, Butler App. No. CA2003–09–239, 2004-Ohio-6927, 2004 WL 2937627, at ¶ 34. See also Sanderson Farms, Inc. v. Gasbarro, Franklin App. No. 01AP–461, 2004-Ohio-1460, 2004 WL 583849, at ¶ 38.

{¶ 22} Because the plain language of the second prong of the Belvedere test imperfectly applies to this view, these courts have modified the requirement of "fraud or an illegal act" to allow for additional forms of misconduct. Their modified version of the second prong thus requires the plaintiff to "present evidence that the shareholders exercised their control over the corporation in such a manner as to commit a *fraud, illegal, or other unjust or inequitable act*

upon the person seeking to disregard the corporate entity." (Emphasis added.) *Wiencek,* 109 Ohio App.3d at 245, 671 N.E.2d 1339. See also *Taylor Steel, Inc. v. Keeton* (C.A.6, 2005), 417 F.3d 598, 610 (adopting this interpretation in the United States Court of Appeals for the Sixth Circuit). Adding unjust or inequitable conduct to the second prong of the *Belvedere* test significantly increases the number of cases in which a plaintiff could pierce the corporate veil.

{¶ 23} The Sixth District Court of Appeals has adopted a narrower view of the *Belvedere* language. That court of appeals strictly follows the plain language of the second prong and limits piercing to those cases in which the defendant shareholder has used its control of the corporate form to commit fraud or an illegal act. *Collum v. Perlman* (Apr. 30, 1999), Lucas App. No. L–98–1291, 1999 WL 252725. The Sixth District Court of Appeals has determined that the Third District Court of Appeals' interpretation of the second prong in *Wiencek* "goes too far" and has noted that this court "appears to have limited the application of the doctrine to those situations in which 'control over the corporation by those to be held liable was exercised in such a manner as to commit *fraud or an illegal act* against the person seeking to disregard the corporate entity.' (Emphasis added.)" Id.

{¶ 24} Under this interpretation, Dombroski would be unable to pierce the corporate veil to sue WellPoint and Anthem Insurance, since she has not alleged that they used their control over Community and Anthem UM to commit any fraudulent or illegal acts against her.[2]

{¶ 25} There are compelling reasons to follow the majority of the courts of appeals and expand the fraud-or-illegal-act test in *Belvedere*. Individuals are normally liable for their own actions, and it makes sense that this principle should be considered even when a corporate form stands between the plaintiff and the offending shareholder.

{¶ 26} Nevertheless, we continue to adhere to the principle that limited shareholder liability is the rule, see *Belvedere,* 67 Ohio St.3d at 287, 617 N.E.2d 1075, and piercing the corporate veil is the "rare exception" that should only be "applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co.,* 538 U.S. at 475, 123 S.Ct. 1655, 155 L.Ed.2d 643. While we noted in *Belvedere* that piercing should be allowed when it would be unjust for shareholders to hide behind the corporate fiction, we also stated that the test adopted there

---

2. Dombroski argues in her brief that the tort of insurer bad faith could constitute an illegal act within the meaning of *Belvedere*. However, our order accepting the certified conflict limited the parties to briefing the issue of whether the corporate veil can be pierced for "unjust or inequitable acts" that do not rise to the level of "fraud or an illegal act." 116 Ohio St.3d 1472, 2008-Ohio-153, 879 N.E.2d 781. Therefore, her arguments in this regard will not be considered. S.Ct.Prac.R. IV(3)(B).

struck the correct balance between the guiding principles of limited shareholder liability and the fact that shareholders occasionally misuse the corporate form as a shield from liability for their own misdeeds. *Belvedere,* 67 Ohio St.3d at 287, 289, 617 N.E.2d 1075.

{¶ 27} Limiting piercing to cases in which the shareholders used their complete control over the corporate form to commit specific egregious acts is key to maintaining this balance. Were we to allow piercing every time a corporation under the complete control of a shareholder committed an unjust or inequitable act, virtually every close corporation could be pierced when sued, as nearly every lawsuit sets forth a form of unjust or inequitable action and close corporations are by definition controlled by an individual or small group of shareholders. See Black's Law Dictionary (8th Ed.2004) 365. Controlling shareholders in publicly traded corporations could also be subject to frequent piercing, regardless of the corporation's liability and its ability to pay for the plaintiff's injuries. Such expansive liability would run contrary to the concept of limited shareholder liability and upset the balance struck in *Belvedere.* Thus, the proposed expansion of the second prong of the *Belvedere* test to include unjust or inequitable conduct is simply too broad to survive exacting review.

{¶ 28} However, having reviewed the various tests for piercing the corporate veil developed by other authorities, we are convinced that our pronouncement in *Belvedere* is too limited to protect other potential parties from the wide variety of egregious shareholder misdeeds that may occur. Limiting piercing to cases of fraud or illegal acts protects the established principle of limited liability, but it insulates shareholders when they abuse the corporate form to commit acts that are as objectionable as fraud or illegality. In view of the reality that shareholders could seriously misuse the corporate form and evade personal liability under the second prong as presently worded, we find it necessary to modify the second prong of the *Belvedere* test to allow for piercing in the event that egregious wrongs are committed by shareholders.

{¶ 29} Accordingly, we hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct. The first and third prongs of the *Belvedere* test are not affected by this ruling and must still be met for a piercing claim to succeed.

{¶ 30} However, even under this expanded version of the second prong of the *Belvedere* test, Dombroski's claim fails. Insurer bad faith is a straightforward tort, a basic example of unjust conduct; it does not represent the type of

exceptional wrong that piercing is designed to remedy. Civ.R. 12(B)(6) provides a suitable vehicle for dismissing such a claim. We therefore reverse the judgment of the court of appeals.

## IV

{¶ 31} For the foregoing reasons, we reverse the holding of the court of appeals and modify the second prong of the *Belvedere* test as set forth above.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 32} Because this court never intended in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, to narrowly define the types of injustices that could satisfy the element of "fraud or an illegal act" required for piercing the corporate veil, because the vast majority of Ohio's appellate districts have effectively applied a less rigid standard to that part of the *Belvedere* test, because the majority's modification of the *Belvedere* test adds words to the test but no clarification, and because the violation of an insurer's duty of good faith satisfies even the majority's distortion of the *Belvedere* test to "fraud, an illegal act, or a similarly unlawful act," I dissent.

## I

{¶ 33} In *Belvedere*, this court found that "the Sixth Circuit's approach [in *Bucyrus–Erie Co. v. Gen. Prods. Corp.* (C.A.6, 1981), 643 F.2d 413] to piercing the corporate veil strikes the correct balance between the principle of limited shareholder liability and the reality that the corporate fiction is sometimes used by shareholders to protect themselves from liability for their own misdeeds." *Belvedere*, 67 Ohio St.3d at 289, 617 N.E.2d 1075. This court quoted the test enunciated in *Bucyrus–Erie Co.*:

{¶ 34} "In *Bucyrus–Erie*, the Sixth Circuit applied Ohio law in reviewing jury instructions in a veil-piercing case. It held that the corporate form may be disregarded when '(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) *that domination and control was used to commit fraud or wrong or other dishonest or unjust act*, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.' Id. at 418." (Footnote omitted; emphasis added.) *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d 1075.

{¶ 35} In restating the *Bucyrus–Erie* test in *Belvedere,* this court expressed no intent to restrictively redefine what types of acts would satisfy the second element of the test enunciated in *Bucyrus–Erie.* Instead, this court truncated *Bucyrus–Erie's* phrase "fraud or wrong or other dishonest or unjust act" to "fraud or an illegal act." Nothing in *Belvedere* indicates that this court felt that *Bucyrus–Erie* was overly expansive in setting forth what kind of corporate misdeeds might be necessary to pierce the corporate veil. Indeed, the court made clear that it was the *injustice* of the underlying shareholders' acts that was significant: "[T]he 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be *unjust* to allow the shareholders to hide behind the fiction of the corporate entity." (Emphasis added.) Id. at 287, 617 N.E.2d 1075. Elsewhere in *Belvedere,* the court cited a corporation's "fraud or other wrongs" that could lead to liability for shareholders. Id. at 288, 617 N.E.2d 1075. A leading treatise interprets this court's decision in *Belvedere* thusly: "[T]he Ohio Supreme Court has now clearly adopted the *Bucyrus–Erie* rule that it is not necessary to prove fraud to pierce the veil." Presser, Piercing the Corporate Veil (2004), 2–449, Section 2:39. That is, until today.

## II

{¶ 36} As the majority sets forth, most Ohio appellate courts that have addressed the issue have held that the *Belvedere* element of "fraud or an illegal act" should not be rigidly and mechanically construed to include only fraud or criminal acts. For instance, the court in *Wiencek v. Atcole Co., Inc.* (1996), 109 Ohio App.3d 240, 245, 671 N.E.2d 1339, held that the second element of *Belvedere* is satisfied where the corporation has committed a "fraud, illegal, or other unjust or inequitable act upon the person seeking to disregard the corporate entity." Ohio corporations have well withstood Ohio appellate courts' expansive view—a view consistent with *Bucyrus–Erie*—of the type of corporate activity that satisfies the second element of *Belvedere.* Piercing the corporate veil remains difficult to achieve; we accepted this case not to cure an epidemic of veil piercings but instead because one Ohio appellate district stood against the tide of Ohio appellate law, creating a conflict. Instead of resolving the conflict, this court has muddied the waters.

## III

{¶ 37} "Now that the Ohio Supreme Court's *Belvedere* opinion has clearly addressed the veil-piercing issue there should be much less uncertainty about the appropriate Ohio tests. They are those to be found in *Bucyrus–Erie* and its progeny." (Footnote omitted.) Presser, Piercing the Corporate Veil, at 2-454–455, Section 2:39.

{¶ 38} To the contrary, today the majority abrogates this court's previous reliance on *Bucyrus–Erie* and thus installs a much more restrictive test than it originally set forth in *Belvedere*. Ironically, the majority claims to be fine-tuning *Belvedere*'s second element to cover "egregious wrongs" perpetrated by shareholders as it simultaneously greatly restricts the kinds of claims that can successfully be brought pursuant to *Belvedere*.

{¶ 39} The majority believes that it expands on the *Belvedere* element of a "fraud or an illegal act" by including the redundancy "or a similarly unlawful act." Thus, not only may an "illegal act" satisfy the second element of the *Belvedere* test, but so will an act that is similarly unlawful to an illegal act. The new language seems to be pulled from the air. Is there a notable distinction between an "unlawful" and an "illegal" act? Not that the majority identifies. The words appear to be two ways of saying the same thing. Potato, potahto, illegal, unlawful—let's call the whole thing off.

{¶ 40} The majority would have been better served by adopting Tennessee's requirement of a "fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act." *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo* (Tenn.1979), 578 S.W.2d 625, 632, or the simple standard set forth in many states requiring an "injustice." Presser, Piercing the Corporate Veil, 2-298–299, Section 2:26. Those standards, and the standards already set forth by Ohio appellate courts, provide useful distinctions between the types of acts that might lead to a piercing of the corporate veil. Today, the majority adds words but no distinctions, and by whitewashing *Belvedere*'s reliance on *Bucyrus–Erie,* places Ohio within the most restrictive jurisdictions for proving a case for piercing of the corporate veil. That was never this court's intent in *Belvedere*.

## IV

{¶ 41} The majority finds that even under its "expanded" version of the *Belvedere* test, Dombroski's claim fails. "Insurer bad faith is a straightforward tort, a basic example of unjust conduct; it does not represent the type of exceptional wrong that piercing is designed to remedy." Majority opinion, ¶ 30. To the contrary, insurer bad faith is an exceptional wrong. "In contract actions, the corporate fiction generally will not be disregarded in cases of simple negligent performance of contractual duties." 1 Fletcher, Cyclopedia of the Law of Corporations (2005) 271, Section 41.85. However, in a bad-faith case, what ordinarily would be a breach-of-contract claim is transformed into a tort action because of the unreasonableness of the insurer's behavior. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. The insurer guilty of bad faith breaches a legal duty owed to the insured. I

would hold that the breach of a legal duty constitutes an illegal or similarly unlawful act.

## V

{¶ 42} For all of the above reasons, and because today's decision reverses the development of Ohio law, I dissent.

---

Robert Gray Palmer Co., L.P.A., and Robert G. Palmer, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., and Suzanne K. Richards, Robert N. Webner, and Michael J. Hendershot; and Thornburg, Bean & Glick and Charles H. Bean, for appellants.

Linda S. Woggon, urging reversal for amici curiae Ohio Chamber of Commerce, Ohio Council of Retail Merchants, Ohio Chapter of the National Federation of Independent Business, and Ohio Farm Bureau Federation.