[Cite as *DeCaprio v. Gas & Oil, Inc.*, 2012-Ohio-5866.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| ANGELA DECAPRIO, et al. | | C.A. No. 26140 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GAS & OIL, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | | CASE No. CV 2003 11 6682 |

## DECISION AND JOURNAL ENTRY

Dated: December 12, 2012

MOORE, Judge.

{¶1} Plaintiffs-Appellants, Angela DeCaprio, Julie DeCaprio, Frank Demczyk, and Dee Luebke (collectively "the DeCaprios"), appeal from the September 30, 2011 judgment entry of the Summit County Court of Common Pleas denying their motion for summary judgment and granting Defendant-Appellee, Joseph Moneskey's motion for summary judgment. For the following reasons, we affirm.

I.

{¶2} In October of 2003, Glenn Bibey, was an employee of Gas & Oil, Inc. He was on a call to deliver heating oil to a residence which had a receptacle to contain it. Unfortunately, he arrived at the wrong address and accidentally deposited approximately 250 gallons of heating oil directly into the basement of the DeCaprios' home. The DeCaprio home had no receptacle to contain the oil. The DeCaprios filed a complaint for trespass and gross negligence against Gas & Oil, Inc., Mr. Bibey, and Mr. Moneskey, the sole shareholder of Gas & Oil, Inc. Additionally,

the DeCaprios' insurance company, Western Reserve Mutual Casualty Company ("Western Reserve"), filed a subrogation complaint against Gas & Oil, Inc., Mr. Bibey, and Mr. Moneskey. The trial court consolidated the cases.

{¶3}    Western Reserve then filed a motion for summary judgment against Gas & Oil, Inc., Mr. Bibey, and Mr. Moneskey. The trial court granted summary judgment against Gas & Oil, Inc. for negligence, trespass, and vicarious liability and against Mr. Bibey[1] for negligence and trespass, but refused to pierce the corporate veil in order to hold Mr. Moneskey personally liable for the actions of Gas & Oil, Inc.  Further, the trial court awarded Western Reserve damages against Gas & Oil, Inc. in the amount of $64,567.47.

{¶4}    Gas & Oil, Inc. filed a voluntary petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code, and the matter was stayed in the trial court.  The DeCaprios voluntarily dismissed their complaint against Gas & Oil Inc. without prejudice but proceeded against Mr. Moneskey by filing a motion to reinstate the case.  In denying the DeCaprios' motion to reinstate the case, the trial court also decided the issue of piercing the corporate veil on its merits, stating:

> Although [Mr.] Moneskey was the sole shareholder, these facts do not support [the DeCaprios'] claim that at the time of the incident in question the corporate entity had no separate mind, will or existence of its own and had no assets.  Nor do they support [the DeCaprios'] claim that [Mr.] Moneskey exercised control over [Gas & Oil, Inc.] in such a manner that justice requires piercing the corporate veil.

Based upon this ruling, the DeCaprios appealed.  This Court reversed and remanded because the trial court improperly converted the motion to reinstate into a motion for summary judgment.

---

[1] Mr. Bibey was subsequently dismissed from the lawsuit due to lack of service, and the trial court vacated a portion of its order granting Western Reserve summary judgment as to Mr. Bibey only.

*See DeCaprio v. Gas & Oil, Inc*. et al., 9th Dist. No. 24840, 2010-Ohio-757, ¶ 7, 8. On remand, the trial court granted the DeCaprios' motion, and reinstated the case against Mr. Moneskey.

{¶5} The DeCaprios filed a motion for summary judgment on the issue of Mr. Moneskey's personal liability. In response, Mr. Moneskey filed a memorandum in opposition/cross-motion for summary judgment. The DeCaprios then filed a motion to strike the cross-motion for summary judgment, reply brief, and memorandum in opposition to the cross-motion for summary judgment. The trial court denied the DeCaprios' motion to strike Mr. Moneskey's cross-motion for summary judgment, denied the DeCaprios' motion for summary judgment, and granted Mr. Moneskey's cross-motion for summary judgment.

{¶6} The DeCaprios timely appealed, and set forth one assignment of error for our consideration.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [MR. MONESKEY].

{¶7} In their sole assignment of error, the DeCaprios argue that the corporate veil should be "pierced" in order to hold Mr. Moneskey personally liable for the acts of Gas & Oil, Inc. because: (1) he controlled the corporation and it had no "mind, will, or existence of its own," (2) he kept the corporation "asset-poor" and "engaged in work that posed a significant environmental hazard" without applicable insurance, and (3) injury or unjust loss resulted from these actions.

{¶8} In response, Mr. Moneskey contends that, as a matter of law, the DeCaprios did not prove all three prongs of the test to pierce the corporate veil set forth in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc*., 67 Ohio St.3d 274 (1993). Mr.

Moneskey argues that: (1) there is a lack of evidence to prove the first prong of the *Belvedere* test, that Gas & Oil, Inc. had "no separate mind, will, or existence of its own," (2) there is a lack of evidence to prove the second prong of the *Belvedere* test, that Gas & Oil, Inc. was being used to commit fraud or other illegal acts, and (3) there is a lack of evidence to prove the third prong of the *Belvedere* test, that Gas & Oil, Inc.'s lack of insurance caused it to be undercapitalized and unable to pay any potential damages.

{¶9}     In its entry denying the DeCaprios' motion for summary judgment and granting Mr. Moneskey's cross-motion for summary judgment, the trial court found no evidence of fraud, an illegal act, or an unlawful act.  Further, the trial court found that the DeCaprios cited no laws that required Gas & Oil, Inc. to carry liability insurance.  The trial court concluded that, "[w]hile [Mr.] Moneskey's deposition testimony contained some facts that might raise an eyebrow * * *, no evidence has been presented to this court that raises a material issue of fact regarding evidence of fraud, an illegal act, or illegal conduct."

{¶10}  An appellate court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).  Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record

that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Specifically, the moving party must support its motion by pointing to some evidence in the record indicated in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293; Civ.R. 56(E).

**Piercing the Corporate Veil**

{¶11} "The principle that shareholders, officers, and directors of a corporation are generally not liable for the debts of the corporation is ingrained in Ohio law." *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 16. "However, shareholders are not absolutely immune from liability for the actions of their corporations." *Id.* at ¶ 17. "Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation 'for criminal or fraudulent purposes' to the detriment of a third party." *Id.* quoting *Belvedere*, 67 Ohio St.3d 287, 289. "Piercing the corporate veil in this manner remains a 'rare exception,' to be applied only 'in the case of fraud or certain other exceptional circumstances.'" *Dombroski* at ¶ 17, quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

{¶12} In *Belvedere* at paragraph three of the syllabus, the Supreme Court of Ohio set forth a three prong test to be utilized in piercing the corporate veil, stating:

> The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

{¶13} However, in *Dombroski* at ¶ 29, the Supreme Court of Ohio modified the second prong of the *Belvedere* test to read that a plaintiff "must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, *or a similarly unlawful act*." (Emphasis added.) In making this modification, the Court reasoned that "[i]n view of the reality that shareholders could seriously misuse the corporate form and evade personal liability under the second prong as presently worded, we find it necessary to modify the second prong of the *Belvedere* test to allow for piercing in the event that egregious wrongs are committed by shareholders." *Id*. at ¶ 28. The Supreme Court also directed that "[c]ourts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Id*. at ¶ 29.

**First Prong- The Alter Ego Doctrine**

{¶14} The first prong of the *Belvedere* test, in essence, is the "alter ego doctrine." *See Willoway Nurseries v. Curdes*, 9th Dist. No. 98CA007109, 1999 WL 820784, *4 (Oct. 13, 1999). In order to satisfy the first prong, a plaintiff must prove that "the individual and the corporation are fundamentally indistinguishable." *Belvedere* at 288. Some factors used to determine if this standard has been met include: (1) gross undercapitalization, (2) whether corporate formalities were observed; (3) whether corporate records were kept; (4) whether corporate funds were commingled with personal funds; and (5) whether corporate property was used for a personal purpose. *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 422-423 (6th Dist.1991); *Pikewood Manor, Inc. v. Monterrey Concrete Constr.*, 9th Dist. No. 03CA008289, 2004-Ohio-440, ¶ 15.

{¶15} As evidence against piercing the corporate veil, Mr. Moneskey submitted an affidavit with his cross-motion for summary judgment, and also relied upon his deposition

testimony.  In his affidavit, Mr. Moneskey attested that, at the time of the incident in 2003, Gas & Oil, Inc. was not undercapitalized, had 56 employees, and had $80,000 on deposit.  Further, Mr. Moneskey attested that he was not present at the time of the incident, nor was he supervising the employees involved in the incident.  Mr. Moneskey also attested that Gas & Oil, Inc. paid Secor International to assist with the hazmat clean up, and paid for the DeCaprios to stay at a hotel for three nights until the Copley Fire Department authorized them to return home.  Additionally, in his deposition taken in 2004, Mr. Moneskey stated that Gas & Oil, Inc. now had 32 employees and was still engaged in the home heating business.  Mr. Moneskey also explained that he was not in Ohio when the incident occurred, and that Gas & Oil, Inc. hired a company to clean up the oil spill.

{¶16}  We note that the trial court found Mr. Moneskey's affidavit to be inconsistent with his deposition testimony.  However, upon review of Mr. Moneskey's affidavit and deposition testimony, we fail to see any inconsistencies because the affidavit addresses Gas & Oil, Inc.'s assets as they existed in 2003, while the deposition addresses Gas & Oil, Inc.'s assets as they existed in 2004.  As such, we conclude that Mr. Moneskey met his initial *Dresher* burden.

{¶17}  As evidence in support of Mr. Moneskey's personal liability for the negligent actions of Gas & Oil, Inc., the DeCaprios submitted the affidavit of Angela DeCaprio.  In her affidavit, Ms. DeCaprio attested, among other things, that: (1) Mr. Bibey, an employee of Gas & Oil, Inc., entered her property and pumped approximately 250 gallons of home fuel oil into her basement, (2) the property is unusable as a residence, and (3) the damages to the property remain unabated. Ms. DeCaprio's affidavit did not aver any facts regarding Mr. Moneskey's alleged control over Gas & Oil, Inc.

{¶18} The DeCaprios also relied upon portions of Mr. Moneskey's deposition testimony to prove that Gas & Oil, Inc. was undercapitalized. In his deposition, Mr. Moneskey testified that he was the president and sole shareholder of Gas & Oil, Inc., which was formed in 1992. When discussing the ownership and operation of several convenience stores that he personally owns, Mr. Moneskey stated that "[t]he company don't own nothing actually." He later clarified, however, that Gas & Oil, Inc. owns the convenience store inventory, and has 32 employees. Mr. Moneskey also stated that Gas & Oil, Inc. is in the home heating oil business, and is able to service approximately 100 customers with only one secretary to take the orders, and one driver to deliver the heating oil. He admitted that Mr. Bibey no longer works for the company, and that, prior to the incident at the DeCaprios' home, Mr. Bibey was properly trained to deliver heating oil by his son, Timothy Moneskey. Additionally, in response to whether Gas & Oil, Inc. maintained business records, Mr. Moneskey attested that it had computerized files for each customer, and personnel files for each employee. The following line of questioning then ensued regarding Gas & Oil, Inc.'s insurance coverage:

Q. Who handles the insurance needs for your company, for Gas & Oil?

A. What do you mean who handles it?

Q. Who buys it, who purchases insurance?

A. Tim was buying it as far as I know.

Q. Do you think that he bought the policies that you provided your attorney?

A. I couldn't tell you what he bought.

Q. So I take it then that you never sat down with an insurance agent and said, okay, this is the kind of coverage I want?

A. No.

* * *

Q. Do you know who the agent was that Tim dealt with, the insurance agent?

A. We had several of them.

Q. Now, do Karen and Lynn maintain the policies of insurance like in the office?

A. You mean keep them in the office, yeah.

{¶19} Based upon this limited evidence, the DeCaprios contend on appeal that the first prong of the *Belvedere* test has been satisfied. However, throughout the litigation in the trial court, the DeCaprios only argued the issue of undercapitalization of the corporation in order to prove that Mr. Moneskey's control over Gas & Oil, Inc. was so complete that it had "no separate mind, will, or existence of its own." *Belvedere* at paragraph three of the syllabus.

{¶20} In *Willoway Nurseries*, 1999 WL 820784, at *4, this Court concluded that the first prong of the *Belvedere* test was satisfied where the evidence showed: (1) commingling of corporate and personal funds, (2) failure to observe corporate formalities, (3) failure to keep accurate accounting records, (4) undercapitalization, and (5) commingling of personal and corporate assets. *See also LeRoux's Billyle Supper Club* at 425.

{¶21} Conversely, in the present matter, there is absolutely no evidence in the record that Mr. Moneskey commingled funds, failed to observe corporate formalities, failed to keep accounting records, and/or commingled assets of the corporation. The DeCaprios did not point to any specific facts, nor did they produce any evidence, suggesting that Mr. Moneskey engaged in these behaviors with regard to his ownership of Gas & Oil, Inc. Instead, the DeCaprios placed all of their eggs in the "undercapitalization" basket based solely upon Mr. Moneskey's statement, "[t]he company don't own nothing actually," and Gas & Oil, Inc.'s failure to carry liability insurance at the time of the incident. While this certainly could be construed as evidence of undercapitalization and poor business practice, it does not, as a matter of law, rise to the level of proving that Mr. Moneskey and Gas & Oil, Inc. are fundamentally indistinguishable. *See*

*Belvedere* at 288. Although this Court empathizes with the DeCaprios' unfortunate situation, we cannot say that the DeCaprios raised a genuine issue of material fact as to whether Mr. Moneskey controlled Gas & Oil, Inc. to the extent that it had no separate mind, will, or existence of its own.

{¶22} Therefore, even viewing the evidence in a light most favorable to the DeCaprios, the trial court did not err in granting judgment as a matter of law to Mr. Moneskey, because reasonable minds can come to but one conclusion: that the corporate veil should not be pierced and Mr. Moneskey should not be held personally liable for the actions of Gas & Oil, Inc. Further, because the first prong of the *Belvedere* test has not been satisfied, we decline to discuss the second and third prongs.

{¶23} Accordingly, the DeCaprios' sole assignment of error is overruled.

III.

{¶24} The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

J. THOMAS HENRETTA, Attorney at Law, for Appellants.

LAWRENCE R. BACH, Attorney at Law, for Appellee.