[Cite as *Springfield v. Palco Invest. Co., Inc.*, 2013-Ohio-2348.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

CITY OF SPRINGFIELD, OHIO :

      Plaintiff-Appellee : C.A. CASE NO. 2012 CA 52

v. : T.C. NO. 10CV460

PALCO INVESTMENT COMPANY, INC., : (Civil appeal from
et al. Common Pleas Court)

       :

      Defendants-Appellants

       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of ___June___, 2013.

. . . . . . . . . .

JEROME M. STROZDAS, Atty. Reg. No. 0003263, Law Director, City of Springfield, 76 East High Street, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

DOUGLAS W. GEYER, Atty. Reg. No. 0022738 and SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 451 Upper Valley Pike, Springfield, Ohio 45504
      Attorneys for Defendants-Appellants

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}** Palco Investment Company and its sole shareholder, Harry C.

Denune, appeal from a judgment of the Clark County Court of Common Pleas, which, after a bench trial, granted judgment in favor of the City of Springfield and ordered Denune to transfer $894,346.86 to Palco, which the court determined had been fraudulently transferred from Palco to Denune. The trial court further determined that the City was entitled to "pierce the corporate veil" of Palco in order to reach Denune's assets so that the City could collect a judgment rendered in favor of the City and against Palco in another case.

{¶ 2} For the following reasons, the trial court's judgment will be affirmed.

*I. Factual Background*

{¶ 3} The evidence presented at the trial before the magistrate revealed the following facts.

{¶ 4} Prior to 1999, Denune personally owned three properties located in Springfield, Ohio: (1) the Leffel Company building on East Street, (2) the Speco building near Bell Avenue, and (3) the Greenwalt-Trenor property at the intersection of West Main and Center Streets. Denune also owned several additional properties, which are not relevant to this action, and he ran ten to fifteen business enterprises. One of those companies was Dixie Distributing, Inc., which is primarily a wholesaler of aftermarket and genuine motorcycle parts; Denune was Dixie Distributing, Inc.'s sole shareholder.

{¶ 5} In 1999, Palco Investment Company was established in Florida as a Subchapter S corporation, with Denune as the sole shareholder. Soon thereafter, in July 1999, Denune sold the three Springfield properties to Palco for $122,206. The agreement acknowledged that the properties were being sold "at Seller's [Denune's] original cost less accumulated depreciation," with three conditions. First, Palco gave Denune a note for

$122,206, with interest of 6.5%. Second, the parties agreed that, if any of the properties were sold to a third party within ten years of the date of the contract, "all proceeds from the sale will be paid to the Seller [Denune] by first paying off the promissory note plus accrued interest and the balance distributed to Seller through Sub-S Distributions." Third, the parties agreed that the consideration for the sale included "the confidentiality of the information contained therein" and that the terms of the contract would not be recorded with the Clark County Recorder.

{¶ 6}    In 2001, the City notified Palco that the company needed to abate a public nuisance in connection with the Leffel property by repairing or demolishing the buildings. Palco pursued several appeals from the order. Ultimately, since the nuisance was not abated, the buildings on the Leffel property were demolished by the City in 2001 and 2002. The City indicated that it would seek reimbursement from Palco for the demolition expenses.

{¶ 7}    In June 2002, Thomas Loftis agreed to purchase the Greenwalt-Trenor and Speco properties from Palco for $460,000 and $440,000, respectively. Loftis assigned the purchase agreements to his company, Midland Properties, Inc. Loftis explained that Midland and the City of Springfield agreed that Midland would take title of the property, but Midland's interest in the property would be transferred to the City for purposes of cleaning up the property through the brown field cleanup program. After the property was remediated, the City would transfer the property back to Midland, which would sell it at cost to the National Trails Parks and Recreation District.

{¶ 8}    The closing for the Greenwalt-Trenor building was held in February 2003.

However, the money consummating the sale was not transferred to Palco at that time, because items were being stored in that building.

{¶ 9}    In February 2004, prior to the transfer of money for the Speco and Greenwalt-Trenor properties, the City filed a lawsuit seeking recovery of the demolition costs for the Leffel property from Palco.  *Springfield v. Palco Investment Co.*, Clark C.P. No. 2004 CV 272.

{¶ 10}    The purchase of the Speco building was completed in June 2004.  After deductions for taxes and transfer fees, Palco received a check, made out to Palco, for $434,193.42.  Palco also received a check of $153.44 for interest on the escrow account associated with the sale.  The checks were deposited into a bank account for Dixie Distributing, Inc.  Three days later, Dixie Distributing, Inc. wrote a check to Palco for $434,346.86, representing the proceeds from the Speco building sale.

{¶ 11}    In July 2004, in accordance with the 1999 agreement between Palco and Denune, the proceeds from the sale of the Speco property were first used by Palco to pay the principal and interest on the note to Denune, and the balance of the proceeds went to Denune's personal account.  At the time the money was distributed from Palco to Dixie Distributing, Inc., and ultimately to Denune, Denune knew that the City of Springfield had filed a lawsuit against Palco for approximately $300,000 arising out of the demolition of the Leffel building.

{¶ 12}    The purchase of the Greenwalt-Trenor property was completed in December 2004.  At that time, Palco received, in a check made out to Palco, $460,218.79 as proceeds from the sale.  The check was again deposited into Dixie Distributing, Inc.'s

account, and then Dixie Distributing, Inc., wrote a check to Palco for $460,218.79. Pursuant to the 1999 agreement, all of the proceeds of this sale then went to Denune in April 2005 and May 2005.

{¶ 13} In 2009, the City of Springfield received a judgment against Palco in Case No. 2004 CV 272 for the Leffel property demolition expenses, which amounted to approximately $378,000, plus interest. Approximately $117,000 of that judgment has been paid out of funds in an escrow account, which was established in connection with Palco's sale of a portion of the Leffel property to third parties.

{¶ 14} Following the sale of the Speco and Greenwalt-Trenor properties, Palco had two remaining assets – a portion of the property on which the Leffel building had formerly sat and a lot on Lowry and Washington Streets in Springfield. Audrey Bullard, Denune's wife and a certified public accountant who managed Denune's and all of the companies' finances, testified that, even if the two remaining properties were sold, Palco would not have enough assets to pay the balance of the City's claim against it.

## II. Procedural History

{¶ 15} In March 2010, the City of Springfield brought suit against Palco, Denune, and Dixie Distributing Company (as opposed to Dixie Distributing, Inc.), another of Denune's companies. The complaint contained three counts. In Count One, the City claimed that Palco sold real estate at Center & North Sts. (the Greenwalt-Trenor property) and "fraudulently transferred the proceeds of that sale to the defendant, Dixie Distributing Company." The City further alleged that Palco "received no equivalent value in exchange for the transfer of sale proceeds to Dixie Distributing Company," and that the transfer was

intended to "hinder, delay, or defraud the City in making the transfer of the sale proceeds." Count Two made the same allegations with respect to the Speco property.

{¶ 16} Count Three of the complaint alleged that Denune was a shareholder, director, and officer of Palco and Dixie Distributing Company. It further stated that Denune "authorized and directed the payment of the proceeds from the two real estate sales described in Counts One and Two in order to deprive the plaintiff of its right to payment of its lawful claim." In doing so, Denune allegedly "disregarded the separate corporate identities of the three corporate defendants in contravention of his fiduciary duties as a director and officer of each of the corporate defendants."

{¶ 17} In its prayer for relief, the City asked the trial court for an order finding that the transfers in Counts 1 and 2 were fraudulent and voiding such transfers to the extent necessary to satisfy the judgment owed by Palco to the City for the demolition expenses. The City also asked for injunctive relief prohibiting (1) Palco and Dixie Distributing Company from transferring any assets between themselves or any other company in which Denune was a partner, member, director, shareholder, or officer, and (2) Denune from authorizing or directing Palco or Dixie Distributing Company to transfer assets among themselves or other companies of which he was a partner, member, director, shareholder, or officer "until such time as the Plaintiff's judgment is fully satisfied." The City sought attorney fees and costs.

{¶ 18} In August 2010, Springfield amended its complaint, adding Dixie Distributing, Inc. as a defendant. (We will refer to Deneune and the three defendant-companies collectively as "Defendants.") The complaint was identical to the

original complaint, except that the allegations regarding Dixie Distributing Company were changed to read "Dixie Distributing Company or Dixie Distributing, Inc."

{¶ 19}    Neither the original nor the amended complaint explicitly alleged that Palco made a fraudulent conveyance when it distributed the sale proceeds from Dixie Distributing, Inc. to Palco or from Palco to Denune as Subchapter S distributions.   And although Count 3 included allegations that Denune "authorized and directed" the payment of the sale proceeds and that he "disregarded the separate corporate identities of the three corporate defendants" in doing so, the City's prayer for relief did not specifically ask the court to satisfy its judgment from Denune's personal assets by "piercing the corporate veil"; rather, its requested relief against Denune was limited to enjoining him from transferring his companies' assets between themselves or him until such time as the judgment was satisfied.

{¶ 20}   In October 2010, Defendants moved for leave to file a motion for summary judgment on the City's claims; the memorandum in support of the motion for leave stated that Denune "had not had sufficient time to prepare for a full hearing" and that he believed the matter "may be more effectively resolved by summary judgment."   The court did not file a written entry addressing the motion.

{¶ 21}    One week before trial, Defendants filed a motion for summary judgment. The proposed motion for summary judgment asserted that the transfer of the sale proceeds from Palco to Dixie Distributing, Inc. was not fraudulent, as those funds were promptly returned to Palco.  Defendants stated, "The City's entire argument is based on an alleged fraudulent transaction between Dixie and Palco as well as a nebulous allegation that Harry Denune's involvement with the above stated transaction was fraudulent.   **No other**

**allegations were made in the complaint**." (Emphasis in original.) The trial court denied the motion for leave. The day before trial, Defendants filed a trial brief, which again argued that there was no fraud in the transfer between Palco and Dixie Distributing, Inc., which was the only allegation in the complaint.

{¶ 22} On January 19, 2011, the matter proceeded to trial before a magistrate. Prior to and throughout the trial, Defendants argued that the complaint was limited to claims that the 2004 sale proceeds were fraudulently conveyed from Palco to either Dixie Distributing Company or Dixie Distributing, Inc., and that Defendants failed to adhere to corporate formalities in doing so. Near the beginning of trial, while Denune was testifying as on cross-examination, Defendants objected to the City's questions about the early days of Dixie Distributing, Inc. Defendants argued that Counts 1 and 2 of the complaint "refer specifically to financial transactions which we, frankly, would stipulate occurred, that money was deposited into an account that was not the account of Palco following the sale of real estate." They further asserted that "Count Three simply refers * * * to the fact that in those two transactions referred to in 1 and 2, Mr. Denune assisted and directed those things to happen. That's the sum total of the allegations in the complaint." They further argued that allegations of fraud need to be specifically alleged, and there was no "notice of any kind of fraudulent behavior that would allow * * * piercing the corporate veil."

{¶ 23} In response, the City acknowledged that Counts 1 and 2 dealt with fraudulent conveyances with regard to the proceeds of the Speco and Greenwalt-Trenor properties, respectively. It characterized Count 3 as alleging "that with regard to those proceeds, [Denune] authorized and directed the payment in order to deprive us of our rights

to payment of our claim and disregarded the separate corporate identities of the three corporate Defendants." The City argued that its allegations provided "sufficient notice that we are challenging the separate corporate identities of those three entities." The City noted that it learned about the various financial transactions between the corporations and Denune during discovery. It emphasized that, prior to discovery, it had no way of knowing that the proceeds went back to Palco and then to Denune individually. The City asserted that it was not required to amend its complaint to add additional factual allegations once discovery revealed what happened to the sale proceeds.

{¶ 24} The magistrate concluded that the allegations regarding the fraudulent conveyances were sufficiently pled, and it limited the discussion to whether there were sufficient factual allegations to support allowing evidence on piercing the corporate veil. After additional argument from the parties, the magistrate concluded that it could construe, from the facts alleged in the amended complaint, a cause of action for piercing the corporate veil.

{¶ 25} Thereafter, Defendants continued to object at trial to evidence related to the relationships among the Defendants and whether they maintained their separate corporate identities. The court overruled the objections based on its prior ruling.

{¶ 26} On July 6, 2011, the magistrate issued a decision granting judgment to the City. The magistrate concluded that the transfers from Palco to Dixie Distributing, Inc. and then back to Palco with regard to both the Speco and Greenwalt-Trenor buildings were not fraudulent conveyances. However, the court concluded that "each transfer of the sale proceeds from Palco to Mr. Denune personally, through sub-chapter S distributions, was a

fraudulent conveyance pursuant to O.R.C. 1336."

{¶ 27} The magistrate further concluded that the City could pierce the corporate veil of Palco to reach Denune's personal assets. It found that Denune exercised substantial control over Palco and that Denune "made all of the major decisions affecting the business, although he consulted with his wife in an informal manner just as anyone would discuss important decisions with their spouse" and that, "[i]n the end, it was Mr. Denune who directed the overall operations of Palco and generally made the major financial decisions for the company." In addition, Denune "diverted substantially all of the assets of Palco in avoidance of the city's claim and thereby gave rise to the city's present suit for fraudulent conveyance – in this magistrate's estimation this alone is sufficient to constitute a fraudulent or otherwise contrary to law/unlawful act under the framework of the piercing the corporate veil doctrine." Finally, the magistrate found that the City established that it was damaged as a result of Denune's actions.

{¶ 28} The magistrate rejected the City's assertion that it could pierce the corporate veil of Dixie Distributing, Inc. The magistrate found that the City failed to present sufficient evidence that Palco and Dixie Distributing Company were indistinguishable.

{¶ 29} Defendants and the City objected to the magistrate's decision. In July 2012, the trial court overruled the objections and entered judgment in favor of the City. The trial court ordered Denune to transfer back to Palco the $894,346.86 that had been fraudulently conveyed. It further ordered that the City was entitled to pierce Palco's corporate veil to reach Denune's assets in order to collect the judgment for demolition costs and interest from Case No. 2004 CV 272.

{¶ 30} Defendants appeal from the trial court's judgment, raising three assignments of error.

### III. Scope of the Pleadings and Evidence at Trial

{¶ 31} Defendant's first assignment of error states:

ALL OF THE EVIDENCE ALLOWED AND THE CONCLUSION REACHED BY THE MAGISTRATE THAT THE TRANSFER OF FUNDS FROM DEFENDANT PALCO TO DEFENDANT DENUNE FROM THE PROCEEDS OF THE SALE OF REAL ESTATE KNOWN AS THE SPECO-DELILLE PROPERTIES AND THE GREENWALT-TRENOR PROPERTIES WAS FRAUDULENT, IS BEYOND THE SCOPE OF THE PLEADINGS HEREIN AND IS ERRONEOUS.

{¶ 32} In their first assignment of error, Defendants claim that the magistrate went beyond the scope of the complaint when it allowed evidence regarding the transfers of the 2004 sale proceeds from Palco to Denune and concluded that these transfers were fraudulent conveyances.

{¶ 33} Ohio is a notice pleading, not a fact pleading, state. *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 9 (2d Dist.). " [A] plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence." *York v. Ohio State Highway Patrol*, 60

Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991), quoted by *Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 50.

**{¶ 34}** Civ.R. 8(A) requires pleadings to contain "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Under Civ. R. 8(A)(1), a plaintiff is only required to plead "sufficient, operative facts to support recovery under his claims. To constitute fair notice to the opposing party, however, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions." (Citations omitted.) *State ex rel. Rogers v. Republic Environmental Sys., Inc.*, 2d Dist. Montgomery Nos. 23513, 23644 & 23723, 2010-Ohio-5523, ¶ 27. Each averment of a pleading must be "simple, concise, and direct. No technical forms of pleading or motions are required." Civ.R. 8(E)(1). Pleadings are to be construed as to do substantial justice. Civ.R. 8(F).

**{¶ 35}** Civ.R. 9(B) creates an exception to the lenient notice pleading requirements in Civ.R. 8. It provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

**{¶ 36}** Ohio's appellate courts have different views on whether claims of fraudulent conveyance must meet the heightened pleading requirements set forth in Civ.R. 9(B). *Compare*, *e.g.*, *Carter-Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 725 N.E.2d 330 (10th Dist.1999) (Civ.R. 9(B) does not apply to claims of fraudulent conveyance), with *Messina v. Clawges*, 8th Dist. Cuyahoga No. 93323, 2010-Ohio-3311

(fraudulent conveyance claim was not pled with required particularity).

{¶ 37}   The Ohio Supreme Court, however, has recognized that claims of fraudulent conveyance and common law fraud are not the same.   *Wagner v. Galipo*, 50 Ohio St.3d 194, 553 N.E.2d 610 (1990).   *Wagner* involved a foreclosure action where the defendant claimed to have no interest in the subject property because the property had been conveyed to someone else.   Although not raised in the foreclosure complaint, the plaintiff challenged the conveyance as a fraudulent conveyance.   The supreme court found that the trial court, by addressing fraudulent conveyance, did not make an "unauthorized amendment of the complaint."   The court reasoned:

> This argument confuses the issue of a fraudulent conveyance with a claim of common-law fraud.   *Complaints alleging fraud must be pleaded with particularity.   Civ.R. 9(B).   However, a conveyance may be "fraudulent as to creditors" under R.C. Chapter 1336 if it renders the debtor insolvent, "without regard to his actual intent[,]" and even if there is no evidence of misrepresentation by the debtor.*   R.C. 1336.04; see, also, *Sease v. John Smith Grain Co.* (1984), 17 Ohio App.3d 223, 17 OBR 489, 479 N.E.2d 284.
> The issue of whether a particular conveyance is fraudulent could be raised in the pleadings, but it could also arise while an action is pending, or even after judgment is rendered, depending on the actions of the debtor and the knowledge of the creditor.   No purpose would be served by formally requiring the creditor to amend the pleadings or file a supplemental complaint whenever the debtor makes, or the creditor discovers, during foreclosure

proceedings, a transfer which appears to be a fraudulent conveyance.

(Emphasis added.)  *Wagner* at 197.

**{¶ 38}** We agree with those Ohio appellate districts that, citing *Wagner*, have rejected the heightened pleading requirements of Civ.R. 9(B) for claims of fraudulent conveyance.  *E.g.*, *Carter-Jones Lumber Co.*, 132 Ohio App.3d 430, 725 N.E.2d 330; *Flagstar Bank FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 15; *Stewart v. R.A. Eberts Co., Inc.*, 4th Dist. Jackson No. 08CA10, 2009-Ohio-4418, ¶ 26.

**{¶ 39}**  In the case before us, the City specifically raised two claims of fraudulent conveyance arising out of the transfer of the proceeds from the sale of two of Palco's properties.  However, Counts 1 and 2 of the amended complaint were directed solely at Palco, Dixie Distributing Co., and Dixie Distributing, Inc.  Although Denune was a named defendant in the suit, there were no allegations in Counts 1 and 2 that the sale proceeds were subsequently transferred to Denune and that any such transfer was a fraudulent conveyance.  In fact, Denune is not mentioned in Counts 1 and 2.  Accordingly, while the allegations in Counts 1 and 2 were sufficient to raise a claim of fraudulent conveyance against Dixie Distributing Co. and Dixie Distributing, Inc., there is nothing in those counts that explicitly alleged that a subsequent transfer from Palco to Denune was fraudulent.

**{¶ 40}**  As stated above, Count 3 alleged that Denune authorized and directed the payment of the 2004 sale proceeds in order to deprive the City of its lawful claim, and that Denune disregarded the companies' separate corporate identities in directing the transfer of those proceeds.  Count 3 appears to be directed solely to the City's request for injunctive relief, preventing further transfer of assets among the Defendants.  The allegations in the

amended complaint do not unambiguously allege a fraudulent transfer to Denune or a request to pierce the corporate veil so that the City could recover the judgment from Denune's personal assets.

**{¶ 41}** During the City's opening statement, counsel told the magistrate that the proceeds from the sales of the Speco and Greenwalt-Trenor properties in 2004 were "funneled through a series of transactions to Mr. Denune personally. We believe that series of events constitutes a fraudulent conveyance." Counsel further told the magistrate that it was "asking this Court to pierce the corporate veil with regard to Palco, Dixie Distributing Company, and Dixie Distributing, Inc.; and asking the Court to recognize the reality of the situation: Harry Denune is Palco; Palco is Harry Denune," and that the same was true as to Denune and his other companies.

**{¶ 42}** Defendants responded in their opening statement that "if this case had been pleaded in an appropriate way," the City might be able to "move forward" as it suggests. Defendants argued (as they had in their proposed summary judgment motion and trial brief) that the City's complaint did not encompass those claims.

**{¶ 43}** The record reflects that the City was aware of the potential claims against Denune prior to beginning the trial. Palco's transfer of the 2004 sale proceeds to Denune personally did not come to light for the first time at trial; the City learned of the various transfers between Palco, Dixie Distributing, Inc. and Denune during discovery, as was apparent by the City's documentary evidence and its questioning of Denune and Audrey Bullard at trial. The City was also aware, based on Defendants' pre-trial motions and their arguments at trial, of the Defendants' argument that the fraudulent conveyance claim against

Denune and the claim to pierce the corporate veil to reach Denune's personal assets were not included in the City's amended complaint. Defendants' objections to the magistrate's decision again argued that the City's amended complaint failed to provide notice of the fraudulent conveyance and piercing the corporate veil claims. (See paragraphs six and ten of Defendants' objections.)

{¶ 44} Although the City was aware of its claims against Denune and of Defendants' objections to the City's pursing them, the City did not ask for leave to amend its complaint. Under Civ.R. 15(A), the City could have amended its complaint prior to trial with leave of court or by written consent of the Defendants. Leave of court should be freely given when justice so requires. Civ.R. 15(A).

{¶ 45} Civ.R. 15(B) also allows pleadings to be constructively amended to conform to evidence. That rule provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the*

*court that the admission of such evidence would prejudice him in maintaining*

*his action or defense upon the merits. The court may grant a continuance to*

*enable the objecting party to meet such evidence.*

(Emphasis added.) "Civ.R 15(B) is consistent with the general principle that cases should be decided on the issues actually litigated at trial." *Baxter v. ABS Const. Supply Co.*, 2d Dist. Darke No. 1344, 1994 WL 731475, * 5 (Dec. 28, 1994), citing *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983).

{¶ 46}   In order for an objecting party to prevent the amendment of a pleading under Civ.R. 15, the party must establish that he will be subject to "serious disadvantage" if the amendment were allowed.   *Baltes Commercial Realty v. Harrison*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 42, citing *Hall v. Bunn*, 11 Ohio St.3d 118, 122, 464 N.E.2d 516 (1984).   "Mere surprise" is generally an insufficient basis for precluding the evidence, and "[i]n determining whether surprise actually exists, the extent to which the objecting party had knowledge of the disputed evidence is often considered."   *Id.*

{¶ 47}   A trial court's decision on whether to allow the amendment of a pleading is reviewed for an abuse of discretion.   *Baltes Commercial Realty* at ¶ 43, citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).   An abuse of discretion implies an attitude on the part of the trial court that is arbitrary, capricious, or unconscionable.   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 48}   When Defendants objected to evidence regarding piercing the corporate veil and the transfers of the sale proceeds from Palco to Denune, the parties focused on whether the amended complaint included those claims.   The City did not ask to amend its complaint

and the magistrate did not expressly grant a motion to amend at trial. In fact, the City argued that amending the complaint again was not necessary, because the amended complaint met the notice pleading requirements of raising fraudulent conveyance and piercing the corporate veil.[1] The magistrate agreed with the City as to what was to be tried.

{¶ 49} On appeal, the City argues that Defendants have never claimed that they were prejudiced by the magistrate's allowing those claims to proceed against Denune. The City emphasizes that the evidence regarding the transfer of the sale proceeds was in Denune's possession, and Defendants never claimed that they were surprised by evidence that Denune was the ultimate transferee. The City contends that the magistrate's construction of the pleadings constituted an implied amendment of the pleadings, and Defendants were not prejudiced by that amendment.

{¶ 50} Civ.R. 15(B) allows an amendment to a pleading to be made at any time, even after judgment, and the rule is to be liberally construed in an effort to decide cases on their merits. *Hall* at 121; *Hemphill v. Dayton*, 2d Dist. Montgomery No. 23782, 2011-Ohio-1613. Moreover, Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings."

{¶ 51} An amendment under Civ.R. 15(B) must be made by motion. *Vanderhorst v. 6105 N. Dixie Drive, L.L.C.*, 2d Dist. Montgomery No. 23491, 2009-Ohio-6687, ¶ 16. However, under certain circumstances, such a motion may be inferred from the arguments of

---

[1] At oral argument, the City contended that it did not request an amendment out of fear of a continuance of the trial, as well.

the parties and the ruling of the trial court, even though Civ.R. 15(B) was not expressly identified. *See Baltes Commercial Realty*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, at ¶ 48.

**{¶ 52}** The City did not expressly seek to amend its complaint, because it believed the claims against Denune were already adequately pled (and, perhaps, it was concerned about a possible continuance). It is apparent from the record that Defendants were aware of the City's general belief that the transfer of funds from Palco was a fraudulent conveyance and that the City learned of the transfer to Denune during discovery. Defendants' pre-trial motions and its objections at trial expressed an anticipation that the City's claim included the transfer of funds to Denune.

**{¶ 53}** Other than stressing the (admittedly inartful) wording of the amended complaint, Defendants did not – in their proposed motion for summary judgment, their trial brief, at trial, in their objections to the magistrate's decision, in their appellate brief, or at oral argument – suggest that they were prejudiced by the trial's proceeding as the magistrate decided. There was no argument, let alone proffer, of witnesses or evidence that would have been presented before the magistrate had the City amended its complaint and "pleaded in an appropriate way." The record demonstrates that Defendants were not surprised that the City was attempting to raise the transfers of the sale proceeds from Palco to Defendants as a fraudulent conveyance, that Defendants were fully prepared to defend against that claim, and that there was no substantial prejudice.

**{¶ 54}** We conclude that the trial court did not abuse its discretion in allowing the City to present evidence that Palco transferred the proceeds from the two sales to Denune

and that such transfers constituted fraudulent conveyances. Although the City did not expressly seek to further amend its complaint and the magistrate did not expressly do so, the magistrate's construction of the City's amended complaint as including such claims of fraudulent conveyance and piercing the corporate veil against Denune may be reasonably interpreted, in these circumstances, as impliedly allowing another amendment to include those claims. The individuals with the most knowledge of these transactions – Denune and Bullard – both testified at trial, the evidence regarding the transactions was within their possession, and we find no evidence from the record that they were surprised by the City's claims and/or were unprepared to defend against them.

{¶ 55} Because the trial court reasonably allowed claims of fraudulent conveyance and piercing the corporate veil to be directed against Denune individually, we find no error in the admission of evidence in support of those claims.

{¶ 56} The first assignment of error is overruled.

*IV. Fraudulent Conveyance of Sale Proceeds*

{¶ 57} Defendant's second assignment of error states:

THE LONG AND TORTURED PATH OF CONCLUSIONS, ALL UNPLED OR UNSUPPORTED BY ANY FACTUAL EVIDENCE, WHICH ULTIMATELY ARRIVES AT A FINAL CONCLUSION THAT A TRANSFER OF FUNDS FROM DEFENDANT PALCO TO DEFENDANT DENUNE WAS, IN FACT, A TRANSFER WHICH VIOLATED THE LAW BY BEING A FRAUDULENT TRANSFER UNDER O.R.C. §1336.04 AND §1336.05 IS TOTALLY WITHOUT ANY BASIS IN FACT AND IS COMPLETELY IN ERROR.

{¶ 58} In their second assignment of error, Defendants claim that the trial court's conclusion that the two transfers of the 2004 sale proceeds from Palco to Denune were fraudulent conveyances was against the manifest weight of the evidence.

{¶ 59} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury [or other fact finder] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 60} In weighing the evidence in criminal or civil cases, a court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 19, ¶ 21. "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Internal citations omitted.) *Id*., quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3. *See also Heffern v. Univ. of Cincinnati Hosp.*, 142 Ohio App.3d 44, 51, 753 N.E.2d 951 (10th Dist.2001); *Estate of Barbieri v. Evans*, 127 Ohio App.3d 207, 211, 711 N.E.2d 1101, 1103 (9th Dist.1998).

{¶ 61} The trial court focused on whether the transfers to Denune fell within R.C.

1336.05, which addresses fraudulent transfers and obligations as to creditors with pre-existing claims. That statute provides:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> (B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

{¶ 62} A "claim" under the statute means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." R.C. 1336.01(C).

{¶ 63} In a detailed decision, the magistrate (and, by adopting that reasoning, the trial court) found that the transfer from Palco to Denune violated R.C. 1336.05. The decision stated, in part:

> * * * Here, there is no evidence that Palco received a reasonably

equivalent value from Mr. Denune when it distributed the proceeds of the sales at issue to Mr. Denune. There was some indication from witnesses that Mr. Denune made loans to Palco, however, no evidence was presented to show that Mr. Denune received the money at issue for the repayment of a loan, except as to the $185,738.86 taken from the proceeds as repayment of the promissory note held by Mr. Denune on the property plus interest. The remaining $708,608 was distributed from Palco to Mr. Denune with no evidence that Palco received any value in return. Certainly, a shareholder is entitled to take distributions from a corporation when the financial health of the business is not jeopardized thereby, and, logically, such distributions are made without the expectation of repayment. However, that is not to say that a distribution cannot be fraudulent pursuant to the fraudulent conveyance statute.

Defendants argue, not only was there "nothing wrong" with Mr. Denune taking distributions in these amounts, constituting the bulk of Palco's assets, at this time, when a known claim was on the horizon, but also, any inference of fraudulent intent is defeated by the language of the 1999 contract whereby Palco first acquired the Greenwalt and Speco properties from Mr. Denune. Pursuant to the 1999 contract, Palco was bound to return the proceeds of any future sale of the properties it purchased in that 1999 contract to Mr. Denune by first paying off the note on the properties held by Mr. Denune (as the bank financing Palco's purchase) and then distributing any

profits from said sale to Mr. Denune through Sub-chapter S distributions. This evidence leads the magistrate to a conclusion completely opposite to the defendant's arguments. The 1999 agreement makes the plaintiff's argument that the sales of the Greenwalt-Trenor and Speco-Dellile properties were in response to the city's impending claim even more persuasive.

Timing is relevant to the question of whether Mr. Denune and/or Palco acted with an intent to defraud, hinder or delay the City. * * * Here, the facts reveal that these sales agreements were entered into in June and December 2002 on the heels of the demolition of the Leffel complex in mid-2002 and after appeals of the city's demolition decision concluded in April of 2002. * * * Therefore, the magistrate concludes that Mr. Denune took assets from Palco without giving Palco something of reasonably equivalent value when he received approximately $900,000 dollars in distributions from the sale of Greenwalt-Trenor and Speco-Dellile, and that his failure to return something of reasonably equivalent value to Palco is an indicia of fraud, under the circumstances that were present at the time of the transfer, pursuant to the fraudulent transfer statute.

Secondly, the Magistrate concludes that Palco was rendered insolvent by the transfer of approximately $900,000 dollars to Mr. Denune from the sales of these two properties. O.R.C. 1336.02 provides that a debtor is insolvent "if the sum of [its] debts ... is greater than all [its] assets at a fair valuation" and *is presumed* insolvent if it generally "is not paying [its] debts

as they become due."  Here, the only assets remaining in Palco after the $900,000 dollar distribution to Mr. Denune, according to the evidence presented at trial, was the land on which the Leffel buildings had stood, some outlots containing residential property, and an industrial type property consisting mostly of vacant land at 214 S. Lowry, called the "sterling lot", which is of unknown value.  The city has received approximately $117,000 dollars toward its approximately $378,000 dollar judgment pursuant to the previously mentioned escrow agreement entered into by Palco and the city on August 21, 2003, whereby the city received payment on a note and mortgage held by Palco for a residential outlot of the Leffel property.  The evidence presented at trial showed that Palco's remaining property holds only unknown/de minimus value.  Therefore, Palco was rendered insolvent by the transfer because its debts, including the substantial debt owed to the City for the demolition of the Leffel buildings, was greater than all of its remaining assets.

Having found that Palco transferred $900,000 to Mr. Denune without receiving something of reasonably equivalent value in return under circumstances which indicate a fraudulent intent, and that the transfer rendered Palco insolvent, the magistrate concludes that the transfer at issue was fraudulent pursuant to O.R.C. 1336.05(A).  In addition, because Palco was insolvent and Mr. Denune had reasonable cause to believe that Palco was insolvent * * *, and because Mr. Denune was an "insider" of Palco (he was

the company's majority shareholder), the magistrate concludes the transfer of

the $900,000 dollars in sales proceeds was fraudulent pursuant to O.R.C.

1336.05(B) as well.

(Emphasis in original.) The court further found, for sake of argument, that the transfers to Denune also violated R.C. 1336.04, which provides an avenue for proving that a transfer is fraudulent regardless of whether the claim arises after the transfer.

{¶ 64} Upon review of the record, the trial court's conclusions were not against the manifest weight of the evidence. First, there is ample evidence to support the trial court's finding that the City had a pre-existing claim against Palco when the sale proceeds were distributed from Palco to Denune. The record reflects that the demolition of the Leffel building was strongly contested by Palco, and Palco should have reasonably expected that the City would assert a claim for reimbursement of the demolition costs. The City ultimately filed suit for those costs in February 2004, prior to the payment of the purchase price of the Speco and Greenwalt-Trenor properties. Audrey Bullard, the accountant for Palco's business affairs and Denune's wife, testified that she knew that the City had a claim of over $300,000 against Palco when Palco sold the properties. Accordingly, the trial court 's conclusion that the City had a claim, within the meaning of R.C. 1336.01(C), for demolition costs against Palco when the proceeds were distributed to Denune was not against the manifest weight of the evidence.

{¶ 65} Second, the record supports the trial court's conclusion that Palco did not receive equivalent value when the sale proceeds were transferred to Denune (with the exception of the portion that was used to pay off the note from Palco's purchase of the

property from Denune). On cross-examination, Audry Bullard testified that Palco did not receive any benefit from the transfer of the real estate sale proceeds to Denune, other than payment of note from Palco's 1999 purchase of the properties. Denune received the proceeds as subchapter S distributions; there was no evidence that any of the proceeds (other than the portion used to pay the 1999 note) was used to repay a loan from Denune to Palco or to otherwise extinguish a debt to Denune.

{¶ 66} Defendants argued that the transfer of the proceeds to Denune as a subchapter S distribution was required by the 1999 purchase agreement. As stated above, the 1999 Contract for Sale and Purchase provided, in part: "If any of the properties described in this Contract are sold to a third party within ten (10) years from the date of this Contract, all proceeds from the sale will be paid to the Seller [Denune] by first paying off the promissory note plus accrued interest and the balance distributed to Seller through Sub-S Distributions."

{¶ 67} Kent Pummel, a certified public accountant with Clark Schaefer Hackett, testified that he did not believe that Palco received anything of value in 1999, due to the "pay back" provision in the purchase contract. Pummel indicated that, while Palco would have the right to receive rents, ownership of the building also involved expenses, such as real estate taxes, upkeep, and maintenance of the building. (Palco received some rental income from Dixie Distributing, Inc., but there was no written lease.) Moreover, because Denune controlled Palco, Denune controlled whether Palco would receive any benefit from the sale of the buildings, due to the "pay back" provision in the 1999 agreement. Thus, even though the distribution of the proceeds was required by the 1999 contract, the record

supports a conclusion that Palco did not receive any value from its ownership of the buildings and, in particular, did not receive value equivalent to the amount of the sale proceeds.

{¶ 68} Finally, there is substantial evidence that the transfers of the sale proceeds from Palco to Denune rendered Palco insolvent. A debtor is insolvent under the Uniform Fraudulent Transfer Act if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation. R.C. 1336.02(A)(1). "A debtor who generally is not paying his debts as they become due is presumed to be insolvent." R.C. 1336.02(A)(2).

{¶ 69} As the trial court discussed, the Speco and Greenwalt-Trenor properties were Palco's principal assets. Dixie Distributing, Inc. made monthly rent payments to Palco, however this rent was in connection with the usage of the buildings and the rent did not add substantially to Palco's assets. Palco also received income (which was put into an escrow account) from the sale of portions of the Leffel property. Bullard testified, however, that she knew that the proceeds from those sales would not pay even half of the City's total demolition claim. Bullard stated that Palco's only remaining asset was the remaining part of Leffel property. She acknowledged that, even if this property were sold, the proceeds would not cover the City's claim. Bullard and Pummel both testified that the distribution of the proceeds from Palco to Denune rendered Palco unable to pay the City's claim against it, and thus Palco was insolvent as a result of the transfers.[2] Conversely, Bullard testified that if proceeds from the sales of the Speco and Greenwalt-Trenor buildings were still in Palco's

---

[2] On direct examination, during Defendants' case-in-chief, Bullard testified that from "2002 to 2008, Palco was never insolvent." Bullard also later testified that Palco was solvent, because it had a positive cash value.

possession, Palco would have cash to pay the City's claim.

{¶ 70} Upon review of the record, the trial court's conclusion that Palco's transfers of the sale proceeds to Denune were fraudulent under R.C. 1336.05(A) was not against the manifest weight of the evidence. In light of this conclusion, we need not discuss the trial court's alternative findings that the transfers also violated R.C. 1336.05(B) and R.C. 1336.04.

{¶ 71} The second assignment of error is overruled.

*V. Piercing the Corporate Veil*

{¶ 72} Defendants' third assignment of error states:

THE TRIAL COURT FAILED TO FOLLOW PREVAILING LAW BY ORDERING THE CORPORATE VEIL TO BE PIERCED AND ALLOWING PLAINTIFF CITY TO RECOVER JUDGMENT FROM DEFENDANT DENUNE PERSONALLY.

{¶ 73} Defendants' third assignment of error challenges the trial court's conclusion that the City could pierce Palco's corporate veil to recover its judgment in Case No. 2004 CV 272 directly from Denune.

{¶ 74} "The corporate form is useful primarily because it creates a division between shareholders and their business concerns: '[The corporate form] has been introduced for the convenience of the company in making contracts, in acquiring property for corporate purposes, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals.'" *Dombroski v. WellPoint, Inc*., 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 16, quoting *State ex rel. Atty. Gen. v.*

*Std. Oil Co.*, 49 Ohio St. 137, 177, 30 N.E. 279 (1892). A corporation is a separate legal entity from its shareholders, even where the corporation has only one shareholder. *Rhodes v. Paragon Molding, Ltd.*, 2d Dist. Montgomery No. 24491, 2011-Ohio-4295, ¶ 42. Consequently, shareholders, officers, and directors generally will not be held personally liable for the acts of a corporation. *Id*.

**{¶ 75}** "Piercing the corporate veil" is "[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts." *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247, 905 N.E.2d 613, ¶ 8, quoting Black's Law Dictionary (8th Ed.2004) 1184. In certain circumstances, the corporate form may be disregarded and the corporate veil may be pierced, for the purpose of allowing creditors to reach the personal assets of the corporation's individual shareholders. *Id*.; *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993).

**{¶ 76}** The Ohio Supreme Court has set forth a three-pronged test for determining whether the corporate veil of a company may be pierced.

> The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act [or a similarly unlawful act] against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted

to the plaintiff from such control and wrong.

*Belvedere*, 67 Ohio St.3d 274, at paragraph three of the syllabus, as modified by *Dombroski*. The party seeking to have the corporate form disregarded bears the burden of proving that the corporate veil should be pierced. *Rhodes* at ¶ 43.

**{¶ 77}** The trial court concluded that each of the prongs was met in this case. It found that Denune "directed the overall operations of Palco and generally made the major financial decisions for the company," that he "diverted substantially all of the assets of Palco in avoidance of the City's claim and thereby gave rise to the city's present suit for fraudulent conveyance," and that "the City has been damaged in the amount of its unpaid judgment as a direct and proximate result of the transfer or diversion of Palco's assets to Mr. Denune personally."

**{¶ 78}** We have no difficulty finding ample evidence to support the trial court's conclusion that the second and third prongs of the *Belvedere* test were met. The record demonstrates that Palco distributed the proceeds from the sales of the Speco and Greenwalt-Trenor buildings to Denune, which substantially depleted Palco's assets. As a result of those transfers, Palco could not pay the City's claim (which was later reduced to judgment) for the demolition costs of the Leffel building, plus interest. The transfers of the proceeds to Denune were fraudulent and prevented the City from executing its judgment.

**{¶ 79}** The first *Belvedere* factor is more troubling. "The first prong of the *Belvedere* test 'is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable.'" *State ex rel. DeWine v. S & R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d

1153, quoting *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d 1075.

{¶ 80}    Bullard testified that Denune was the sole shareholder of Palco and that he controlled the company.   Bullard stated that Denune consulted with her about the business, but he did not need anyone else's approval to make decisions.   In discussing the unusual "pay back" provision of the 1999 agreement selling the three properties to Palco, Bullard agreed that Denune would not have sold the properties to "anybody else" on those terms. Within a few years of obtaining the properties, Palco sold the Speco and Greenwalt-Trenor properties to a third party, even though it was obligated, under the terms of the 1999 agreement, to return all of the proceeds to Denune personally through Subchapter S distributions if the properties were sold a third party within ten years.

{¶ 81} Bullard further testified, however, that Palco had a separate federal identification number and a separate bank account.   Bullard further stated that Denune did not use any of the corporate assets or property for his personal benefit, he had not used the corporation to make personal purchases, and he did not commingle personal and corporate assets.   Bullard testified that Denune did not use the corporate offices for personal reasons, that Denune's corporations have annual shareholder meetings and elect officers and directors, and that the companies have corporate minute books.   Bullard stated that each of Denune's companies filed corporate tax returns where required by law.   The City presented affidavits by Annesa Lauer Denune, Denune's adult daughter, to challenge the credibility of Bullard's statements that Denune's companies follow corporate formalities.[3]

---

[3] The affidavits and supporting documents were presented as Plaintiff's Ex. 24.   Defendants objected both to the City's questions to Bullard about that exhibit and to the exhibit's admissibility.   The trial court permitted the exhibit to be admitted "only as to testing the credibility of Ms. Bullard's testimony."

{¶ 82} The trial court found that the first prong was met, with the following reasoning:

> * * * [I]t is clear that Mr. Denune's control over Palco is substantial. In particular, with regard to the sale of the Greenwalt-Trenor and Speco-Delille buildings and the subsequent distribution of those proceeds to Mr. Denune, those decisions were made by Mr. Denune individually – he did not need anyone else's permission to conduct the transactions at issue. Even more generally, the evidence presented at trial made clear that Mr. Denune made all of the major decisions affecting the business, although he consulted with his wife in an informal manner just as anyone would discuss important decisions with their spouse, whether or not they felt they needed their spouse's permission to move forward. In the end, it was Mr. Denune who directed the overall operations of Palco and generally made the major financial decisions for the company. * * * Therefore, the magistrate concludes that the first prong of the three prong test was clearly established by the City at trial.

{¶ 83} We disagree with the trial court that Denune's sole control of Palco, by itself, was sufficient to establish that Denune was the "alter ego" of Palco. Palco was a real estate holding company with Denune as its sole shareholder. As stated by the Fifth District, "[t]o find that such a scheme creates an automatic right to pierce the corporate veil would virtually undo all small businesses functioning as LLCs or Sub-Chapter S Corporations. The true issue is not dominion and control, but whether [the sole shareholder] was the 'alter ego' of [the corporation]." *State ex rel. Cordray v. U.S. Technology Corp.*, 5th Dist. Tuscarawas No. 11AP60025, 2012-Ohio-855, ¶ 26.

**{¶ 84}** In determining whether a corporation is an individual's alter ego, Ohio appellate courts consider various factors, such as (1) whether corporate formalities were observed, (2) whether corporate records were kept, (3) whether corporate funds were commingled with personal funds, (4) whether corporate property was used for a personal purpose, and (5) gross undercapitalization. *My Father's House No. 1 v. McCardle*, 2013-Ohio-420, – N.E.2d. –, ¶ 28 (3d Dist.)(using factors 1-4); *DeCaprio v. Gas & Oil, Inc*., 9th Dist. Summit No. 26140, 2012-Ohio-5866, ¶ 14 (using factors 1-5). These factors are non-exclusive. *See State ex rel. DeWine v. S & R Recycling, Inc*., 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d 1153, ¶ 31 (7th Dist.) (also considering whether shareholders held themselves out as personally liable for certain corporate obligations and used the corporation as a facade for the majority shareholders); *Wilson v. Superior Foundations, Inc.*, 12th Dist. Clermont No. CA2007-03-043, 2008-Ohio-1359, ¶ 14 (considering seven factors).

**{¶ 85}** The trial court was presented with conflicting evidence as to whether Denune treated Palco as a separate entity from himself. As stated above, Defendants provided some evidence that Palco and Denune maintained separate identities. Palco paid Denune a property management fee. Bullard testified that Palco had a separate federal identification number and a separate bank account, kept corporate minute books, and had annual shareholder meetings. Bullard further testified that Denune did not use any of the corporate assets or property for his personal benefit and did not use the corporate offices for personal reasons.

**{¶ 86}** There was other evidence, however, that raised questions about the credibility of Bullard's testimony regarding the corporate formalities. For example, the City

presented evidence that Denune's daughter was named the president of another company without her knowledge and that she was not actually present for annual shareholder meetings, although the minutes for 2002 to 2009 (which she allegedly signed later en mass) reflected she was. In addition, there was evidence that Helen Coil was the president of Dixie Distributing, Inc., but her knowledge of the overall finances and capitalization of the business was minimal.

{¶ 87} There was substantial evidence that Denune exercised full dominion and control over Palco. Denune was Palco's sole shareholder and had sole responsibility for the decision-making for the company. Although this degree of control, by itself, does not establish that Denune was Palco's alter ego, several of the decisions that Denune made for Palco reflect that Palco was not treated as a separate entity from Denune. The 1999 sale of Denune's properties to Palco had an "unusual" pay back and confidentiality provision, which Bullard admitted would not have been included in an agreement with an unrelated third party. Denune initially deposited the proceeds from the sale of Palco's real estate into a Dixie Distrubuting, Inc. account for Denune's convenience; there was no business reason for Palco to have done so. Palco sold the Speco and Greenwalt-Trenor properties within the ten-year time period set forth in the 1999 agreement, an act which provided no benefit to Palco as a separate entity from Denune. Palco did not have a written lease with Dixie Distributing, Inc., another of Denune's companies.

{¶ 88} Although the issue is a close one, the trial court's conclusion that the first *Belvedere* prong was met was not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.

*VI. Conclusion*

**{¶ 89}** We appreciate that this has been a lengthy and contentious dispute between the parties. However, this is no excuse for the ad hominem attacks and hyperbolic arguments that have come from counsel. The purpose of an appellate brief is to clearly and concisely present legal issues to the court and to fairly and professionally argue the law. Anything else is not helpful to the court or the parties and is not worthy of the experienced and extremely competent counsel involved in this case.

**{¶ 90}** The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Jerome M. Strozdas
Douglas W. Geyer
Samantha L. Berkhofer
Hon. Richard J. O'Neill